IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| HARVEY L. MANTEI, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 170123N |
| | ) | |
| v. | ) | |
| | ) | |
| LINCOLN COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiff appeals the real market value of property identified as Account R290064 (subject property) for the 2016-17 tax year. A telephone trial was held on August 31, 2017. Plaintiff appeared and testified on his own behalf. Joel Matz (Matz), Appraiser III, appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 to 13 were received without objection. Defendant's Exhibits A and B were received without objection.

## I. STATEMENT OF FACTS

A. *Description of the Subject Property*

The subject property is a single-story, 1,456-square-foot single-family residential home originally built in 1936. (Def's Ex A at 1.) A detached garage with shop was added in the 1980s and an extensive addition was made in 1995. (*Id*.) The home is situated on 0.40-acre lot in Waldport, Oregon. (*Id.* at 1, 3.) The home has two bedrooms, two bathrooms, a covered deck, and a detached two-car garage with a finished shop measuring 1,300 square feet. (Ptf's Ex 1 at 2, 11.) Plaintiff testified that the subject property is "a little cabin" with a workbench shop in the detached garage; its floors are sinking and have to be "jacked up" annually.

---

[1] This Final Decision incorporates without change the court's Decision, entered October 12, 2017. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

B.      *The Roll Value and Parties' Value Requests*

Defendant determined the subject property's 2016-17 real market value was $212,290 and its maximum assessed value was $200,370.  (Ptf's Ex 2.)  Plaintiff appealed to the Lincoln County Board of Property Tax Appeals (Board) and the Board sustained Defendant's real market value.  (Am Compl at 2.)  Plaintiff appealed the Board's Order to this court, requesting a reduction of the real market value to $147,000.  (Ptf's Ex 3.)  Matz stated at trial that Defendant requests that the court sustain the subject property's roll real market value of $212,290.

C.      *Plaintiff's Evidence*

Plaintiff acquired the subject property in a trust disposition on August 12, 2015, for $100,000.  (*See* Ptf's Ex 1 at 36)  He testified that an attorney recommended he get an appraisal to justify the value.  Plaintiff submitted and relied upon an appraisal report by C.J. Wright (Wright), an Oregon Certified Real Estate Appraiser, who did not testify.  The appraisal referenced the transfer for $100,000 as "between family members" and, therefore, not arm's-length.  (*Id*. at 10.)  Wright estimated the subject property's real market value as of June 27, 2016, was $146,926 by cost approach and $141,000 by sales comparison approach.  (Ptf's Ex 1 at 4.)  Wright did not use the income approach to value the subject property.  (*Id*.)

In the sales comparison approach, Wright considered three homes within 1.4 miles of the subject property that sold within the prior year to the date of the appraisal report, one pending sale, and one listing as of June 27, 2016.  (Ptf's Ex 1 at 3, 5.)  The three comparable sales ranged in price from $119,000 to $141,000.  (*Id*. at 3.)  Wright made adjustments for lot size, age, room count, gross living area, garage capacity, basement, fireplace, and shop, for adjusted sale prices ranging from $120,200 to $153,000.  (*Id*.)  Wright gave equal weight to the three sales.  (*See id*.)

/ / /

Under the cost approach, Wright determined the reproduction cost for the subject property using $84 per square foot for the dwelling and $15 per square foot for the garage. (Ptf's Ex 1 at 4.) Wright adjusted the resulting value for additional amenities and for depreciation, resulting in an indicated value of $146,926 under the cost approach. (*Id.*)

Plaintiff provided exhibits concerning the demographics of Waldport, including average incomes. (*See generally* Ptf's Ex 10.) He testified that the required monthly payment on a 30-year fixed $190,000 mortgage would be $962.70 per month, not including taxes and insurance, and would require an annual income of $43,430. (Ptf's Exs 7, 9.) The "average worker income" in Waldport was $25,599, and the median household income was $30,542, according to 2010 census data. (Ptf's Ex 10 at 2-3.) Plaintiff testified that that evidence demonstrated the average person in Waldport could not afford the subject property at Defendant's real market value. Matz testified that homes for sale are not limited to buyers who are residents of the Waldport area.

D.    *Defendant's Evidence*

Defendant submitted a sales grid prepared by Matz, which compared three properties that sold between March 31, 2015, and September 21, 2016, for prices ranging from $175,000 to $244,000. (Def's Ex A at 1.) Matz testified that he selected houses located on the east side of Waldport and on septic systems. He testified that he selected properties closer to the subject property than those selected by Plaintiff's appraiser to ensure similar traits to the subject property. Matz attempted to find homes of a similar size and condition; two of the houses were newer construction compared to the subject property and one was "updated" in 2001. (*Id.*) He testified that he was not able to find any houses with comparably large garages or shops and all the comparable sale garages and shops were "inferior" to the subject property. (*See id.* at 2.)

Matz made adjustments to his comparable sales for differences in lot size, gross living area, and garage and shop size. (*See* Def's Ex A at 1.) His largest adjustments – ranging from $26,488 to $38,700 – were for the garage/shop space. (*See id.*) Matz testified that he used a garage and shop adjustment of $43 per square foot based on the Department of Revenue's Cost Factor Book. He testified that he did not factor in the age of the subject property's garage, but he used average condition for the calculation; he was unsure if age and condition were the same factor in the book, but Defendant treats them as the same. Matz determined adjusted sales prices ranging from $202,460 to $246,960. (*See id.*) He concluded a real market value of $224,696 was indicated for the subject property. (*Id.*)

Plaintiff testified that he did not consider Defendant's sales to be comparable to the subject property. He described some as too new and "immaculate," noting others had additional amenities such as recreational vehicle storage, greenhouses, and landscaping.

## II. ANALYSIS

The issue is the 2016-17 real market value of the subject property. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD 020869D, WL 21263620 at *2 (Mar 26, 2003) (citations omitted). Real market value is defined in ORS 308.205(1)[2], which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2016-17 tax year was January 1, 2016. ORS 308.007; ORS 308.210.

/ / /

_____

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). There are three approaches of value that must be considered, although all three may not be applicable in a given case. OAR 150-308-0240(2)(a). The three approaches are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. *Id*.

The sales comparison approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Management Corp v. Lane County Assessor*, TC-MD 060354D, WL 1068455 at *3 (Apr 3, 2007) (citations omitted). "The court looks for [arm's-length] sale transactions of property similar in size, quality, age and location * * * in order to determine the real market value" of the subject property. *Richardson*, WL 21263620 at *3.

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect [arm's-length] market transactions. When nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for nontypical market condition."

OAR 150-308-0240(2)(c).

Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Plaintiff "must provide competent evidence of the [real market value] of [his] property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed

brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D, WL 879285 (Mar 13, 2012). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof[.]" *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235, 238 (1990).

Plaintiff relied upon an appraisal report prepared by Wright. The court has a number of concerns with the report. Most importantly, Wright did not testify at trial to explain how comparable sales were selected or adjustments were made to those sales. For instance, the court inquired why Wright used $15 per square foot for the calculation of the garage value in the cost approach. That question could not be answered without Wright's testimony at trial.

Matz described the importance of selecting properties closer to the subject property, which also used septic systems, as contrasted with properties located further away and on city sewer service. He explained the adjustments he made in his sales comparison approach. On the evidence presented, the court is unable to conclude that the comparable sales selected and adjusted by Wright were more similar to the subject property than those selected by Matz.

In addition to Wright's appraisal report, Plaintiff presented evidence concerning the demographics and average incomes of Waldport residents. He theorized that Waldport residents could not purchase the subject property for Defendant's real market value. However, as Matz noted, Plaintiff failed to prove that the market for house buyers in Waldport is limited to current Waldport residents. Furthermore, Matz' comparable sales demonstrate that houses in Waldport do sell for $197,000 and $244,000.

As the party seeking relief, Plaintiff must provide persuasive evidence to support the real market value. For the reasons discussed above, Plaintiff's evidence is unpersuasive and Plaintiff has failed to meet the burden of proof. Even though the burden has not shifted, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence

before the court, without regard to the values pleaded by the parties." ORS 305.412. Defendant requested that the court sustain the roll value of $212,290, even though Matz concluded a real market value of $224,696 under his sales comparison approach. The tax roll value of $212,290 is within the value range indicated by Matz' sales comparison approach. As a result, the court finds no basis to correct the tax roll real market value.

## III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiff failed to carry his burden of proof. Defendant's evidence supported the subject property's 2016-17 real market value of $212,290 and the court finds no basis to correct the tax roll real market value. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of October, 2017.

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Boomer and entered on October 31, 2017.*